Dana L. Sullivan, OSB No. 94483
E-mail: dsullivan@mbjlaw.com
MCKANNA BISHOP JOFFE & SULLIVAN LLP
1635 NW Johnson St.
Portland OR 97209
Telephone: (503) 226-6111
Facsimile: (503) 226-6121

Of Attorneys for Plaintiff Thompson

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LISA THOMPSON,** | Civil No. CV 03-01634 HA |
| Plaintiff, | **AMENDED COMPLAINT** |
| vs. | (Injured Worker Discrimination, ORS 659A.040; Retaliation, ORS 659A.030(f) and Family and Medical Leave Act, 29 USC §2615) |
| **NEW TECH ELECTRIC, INC.** | |
| Defendant. | DEMAND FOR A JURY TRIAL |

## INTRODUCTION

1.  This is an action for monetary relief, including liquidated damages, punitive damages and attorney's fees and costs, to redress the deprivation of rights secured to the plaintiff by ORS Chapter 659A and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

## JURISDICTION

2.  Plaintiff originally filed this action in the Circuit Court of the State of Oregon for the County of Multnomah and defendant removed to federal court pursuant to 28 U.S.C. §1331, federal question jurisdiction.

PAGE 1 -   AMENDED COMPLAINT

3.	Venue is in the District of Oregon pursuant to 28 U.S.C. §1391(b) because the claims arose in this judicial district.

## PARTIES

4.	Plaintiff, Lisa Thompson ("plaintiff"), is a citizen of the County of Columbia in the State of Oregon. At all material times, plaintiff was employed by New Tech Electric, Inc. as a Safety Officer/Director at New Tech Electric Inc.'s headquarters at 6950 NE Campus Way, Hillsboro, Oregon.

5.	Defendant, New Tech Electric, Inc., ("defendant") is an Oregon corporation that provides a variety of electrical services in residential, commercial, and industrial settings. Defendant's principal place of business is located at 20811 NW Cornell Road, Hillsboro, OR 97124-9810. At all material times, defendant employed at least eighty (80) employees in Oregon.

## GENERAL ALLEGATIONS

6.	Plaintiff began her employment as Safety Officer with defendant on September 19, 1994.

7.	On or about December 11, 2002, plaintiff was involved in an on-the-job motor vehicle collision, as a result of which plaintiff suffered neck and back strain. A physician took plaintiff off work on December 11 and 12, 2002, and released her to full duty as of December 13, 2002.

///

///

Page 2 - AMENDED COMPLAINT

8. Contrary to defendant's prior practice, defendant refused to pay plaintiff for December 11 and December 12, 2002, the two days that plaintiff missed work due to her accident-related injuries.

9. During the last two weeks of December 2002, Ken Dale, Interim President, repeatedly questioned plaintiff about her accident. He implied without foundation that plaintiff had not been truthful in her account of the accident.

10. In or around late December 2002, plaintiff informed Dale that she required intermittent time off from work to attend physical therapy appointments to treat ongoing discomfort arising from the injuries sustained in the motor vehicle collision. Dale told plaintiff that she was not permitted to leave the office for any reason other than her pre-approved physical therapy appointments. This limitation interfered with plaintiff's ability to perform her job since her job responsibilities required her to be out in the field frequently.

11. After plaintiff's on-the-job injury, Dale further limited the scope of plaintiff's job responsibilities by telling co-workers that they should report workers' compensation claims to Deborah Cobun, Comptroller, although processing workers' compensation claims had always been plaintiff's responsibility as Safety Officer.

12. After plaintiff's on-the-job injury, Cobun and Dale began scrutinizing plaintiff's activities while she was at work. On at least one occasion after plaintiff had a lengthy work-related meeting with someone in her office, Dale questioned one of plaintiff's coworkers about the individual with whom plaintiff had been meeting.

///

13. On or about the second week in January, 2003, plaintiff had an appointment with her primary care physician who ordered her to take four days of work off due to the effects of her injuries. At the conclusion of the four-day leave, plaintiff's physician again released her to full duty.

14. During a meeting on or about January 14, 2004, plaintiff reported to Dale that she believed that he was treating her less favorably than he had previously because she had filed a workers' compensation claim.

15. On or about January 27, 2003, plaintiff reported to Joe Anderson, Loss Control Manager for defendant's parent company Integrated Electrical Services ("IES"), and Harvey Hammock, Corporate Safety Director for IES, her concern that since her on-the-job injury Dale had restricted her to the office thereby interfering with her ability to do her job. Plaintiff suggested to Hammock that she might contact the Oregon Bureau of Labor and Industries (BOLI) regarding her concerns that Dale had treated her less favorably since her on-the-job injury.

16. On or about February 1, 2003, plaintiff received notification that SAIF had accepted her workers' compensation claim.

17. On or around February 3, 2003, Wade Parkin replaced Dale as defendant's President.

18. On or about February 3, 2003, plaintiff met with Dee Dennis, Regional Operating Officer. Dennis indicated that he had heard a rumor that plaintiff had raised some concerns about her job and that he wanted to hear what plaintiff had to say about it. Plaintiff told Dennis that

///

because Dale refused to let her work outside the office, she felt that she was unable to perform her job.

19. On March 21, 2003, Parkin informed plaintiff that he had decided to terminate her employment. He said that he did not think that he and plaintiff could work together and that he had heard things about her that had caused him to believe that her credibility was in question.

## FIRST CLAIM FOR RELIEF

### (Injured Worker Discrimination - ORS 659A.040)

20. Plaintiff realleges and incorporates paragraphs 1 through 19.

21. On or about December 11, 2002, plaintiff applied for workers' compensation benefits due to an on-the-job injury.

22. After plaintiff initiated a worker's compensation claim, defendant discriminated against plaintiff in the terms and conditions of her employment by: (1) refusing to pay plaintiff for the first two days she missed work due to her on-the-job injuries, contrary to defendant's customary practice; (2) repeatedly questioning plaintiff about the motor vehicle collision and implying without foundation that plaintiff had been untruthful; (3) scrutinizing plaintiff's actions while at work; (4) restricting the scope of plaintiff's job duties and responsibilities by prohibiting plaintiff from leaving the office except for physical therapy appointments and by advising employees to seek assistance from others in connection with matters that were previously plaintiff's responsibility; and (5) terminating plaintiff's employment.

23. Defendant took the actions described in paragraph 22 because plaintiff filed a workers' compensation claim.

Page 5 - AMENDED COMPLAINT

24. As a direct and proximate result of defendant's discriminatory actions, plaintiff has suffered economic damages, including past and future lost wages and employment benefits in an amount to be determined at trial, plus prejudgment interest.

25. As a direct and proximate result of defendant's discriminatory actions, plaintiff suffered mental distress, annoyance, humiliation, and other non-economic damages in the amount of $300,000.00.

26. Defendant's conduct was with malice or reckless indifference to plaintiff's protected rights and plaintiff is entitled to an award of punitive damages pursuant to ORS 659A.885(2).

27. Pursuant to ORS 659A.885, plaintiff is entitled to her reasonable attorneys fees and costs.

## SECOND CLAIM FOR RELIEF

### (Retaliation - ORS 659A.030(1)(f))

28. Plaintiff realleges and incorporated paragraphs 1 through 19.

29. Plaintiff opposed an unlawful employment practice by reporting to management-level employees of defendant and IES, defendant's parent company, concerns that defendant was treating her less favorably as a result of her filing of a workers' compensation claim and by suggesting that she might file a complaint with BOLI.

30. Defendant discharged plaintiff because of her opposition to unlawful employment practices.

///

Page 6 - AMENDED COMPLAINT

31. As a direct and proximate result of defendant's retaliatory actions, plaintiff has suffered economic damages, including past and future lost wages and employment benefits in an amount to be determined at trial, plus prejudgment interest.

32. Pursuant to ORS 659A.885, plaintiff is entitled to her reasonable attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

### (Family and Medical Leave Act - 29 U.S.C. § 2615)

33. Plaintiff realleges and incorporates paragraphs 1 through 19.

34. Plaintiff was eligible for leave under the Family and Medical Leave Act ("FMLA") because she met the criteria set forth in 29 U.S.C. § 2611.

35. Plaintiff took medical leave to recover from and seek treatment for a serious health condition.

36. Defendant interfered with and denied plaintiff's FMLA rights in violation of 29 U.S.C. § 2615(a) by: (1) failing to characterize her leave as FMLA leave; and (2) using her protected leave as a factor in its decision to substantially reduce plaintiff's job responsibilities and to terminate plaintiff's employment.

37. As a direct and proximate result of defendant's conduct, plaintiff has suffered economic damages, including past and future lost wages and employment benefits in an amount to be determined at trial, plus prejudgment interest.

///

///

38. As a direct and proximate result of defendant's conduct, plaintiff is also entitled to liquidated damages equal to the sum of plaintiff's lost wages and benefits, plus the prejudgment interest thereon.

39. Pursuant to 29 U.S.C. §2617(a)(3), plaintiff is entitled to an award of attorneys' fees, expert fees and costs incurred herein.

40. Plaintiff demands a jury trial.

WHEREFORE, plaintiff prays for judgment against defendant as follows:

On plaintiff's First Claim for Relief:

1. A declaration that defendant violated plaintiff's right to be free from discrimination for filing a claim for workers' compensation;

2. Economic damages for past and future lost wages and benefits, plus prejudgment interest, in an amount to be determined at trial;

3. Noneconomic damages in the amount of $300,000;

4. Punitive damages in the amount of $300,000;

5. Plaintiff's attorneys' fees and costs.

On plaintiff's Second Claim for Relief:

1. A declaration that defendant unlawfully retaliated against plaintiff for reporting discrimination, in violation of ORS 659.030(1)(f);

2. Economic damages for past and future lost wages and benefits, plus prejudgment interest, in an amount to be determined at trial;

3. Plaintiff's attorneys' fees and costs.

On plaintiff's Third Claim for Relief:

1.  A declaration that defendant interfered with and denied plaintiff's FMLA rights in violation of 29 U.S.C. § 2615(a) by: (1) failing to characterize her leave as FMLA leave; and (2) using her protected leave as a factor in its decision to substantially reduce plaintiff's job responsibilities and to terminate plaintiff's employment.

2.  Economic damages for past and future lost wages and benefits, plus prejudgment interest, in an amount to be determined at trial;

3.  Liquidated damages; and

4.  Plaintiff's attorneys' fees, expert witness fees and costs.

DATED this 2=th day of July, 2004.

MCKANNA BISHOP JOFFE & SULLIVAN LLP

*/s/ Sullivan*

DANA L. SULLIVAN, OSB No. 94483
Telephone: (503) 226-6111
Of Attorneys for Plaintiff Thompson

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **AMENDED COMPLAINT** on:

> David G. Hosenpud
> Leah C. Lively
> Lane Powell Spears Lubersky LLP
> 601 SW 2nd Ave. Ste 2100
> Portland, OR 97204
> Facsimile: (503) 778-2200
> E-Mail: hosenpudd@lanepowell.com
> E-Mail: livelyl@lanepowell.com

by the following indicated method or methods:

- [X] by **mailing** a copy thereof in a sealed, first-class postage-paid envelope, addressed to the attorney(s) listed above, and deposited with the United States Postal Service at Portland, Oregon, on the date set forth below.

- [ ] by **hand delivering** a copy thereof to the attorneys listed above, on the date set forth below.

- [ ] by **sending via overnight courier** a copy thereof in a sealed, postage-paid envelope, addressed to the attorney(s) listed above, on the date set forth below.

- [ ] by **faxing** a copy thereof to the attorney(s) listed above at the fax number(s) shown above, on the date set forth below.

- [ ] by **e-mailing** a copy thereof to the attorney(s) listed above to the e-mail address(es) shown above, on the date set forth below.

DATED this 27th day of July, 2004.

*/s/ D.L. Sullivan/*
Dana L. Sullivan, OSB No. 94483
Telephone: (503) 226-6111
Of Attorneys for Plaintiff Thompson